**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| **LASHELLE JONES-HERRION and** ) | |
| **ERIC HERRION, SR., parents of the** ) | |
| **minor child K.H.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 18-2828 (RMC)** |
| **v.** ) | |
| ) | |
| **DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |

_____ )

**MEMORANDUM OPINION**

Under the Individuals with Disabilities Education Act, Defendant District of

Columbia Public Schools (DCPS) was required to evaluate seventh-grade student K.H. to

determine if she had a disability and was eligible for special education services. Of the five

assessments DCPS agreed to include as part of its evaluation, DCPS performed only four. Of

those four, DCPS could only defend three before an administrative hearing officer. Believing

that the DCPS evaluation was deficient, Plaintiffs, the parents of K.H., asked DCPS to fund an

Independent Educational Evaluation which would include all five assessments K.H. was

supposed to receive. In the course of litigation, DCPS offered to fund independent assessments

for only those two assessments which DCPS itself failed to perform. The question now is

whether the offer to fund only two independent assessments is enough to moot Plaintiffs'

request.

For the reasons described below, the Court finds that the inability of DCPS to

defend its own evaluation entitles K.H. to a full Independent Education Evaluation, including all

relevant assessments, not just two assessments. Accordingly, the Court will grant Plaintiffs' motion for summary judgment and deny the cross motion filed by DCPS.

## I. BACKGROUND

### A. Statutory Framework

The Individuals with Disabilities Education Act of 2004 (IDEA), 20 U.S.C. § 1400 *et seq.*, aims to ensure that "all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." *Id.* § 1400(d)(1)(A). Under IDEA, schools must promptly identify, locate, and evaluate every child with a disability who resides in the school district who may require special education and related services. *Id.* § 1412(a)(3)(A). Once a disabled child is identified, the child's parents, teachers, school officials, and other professionals collaborate to develop an individualized education program (IEP) to meet the child's unique needs. *See id.* §§ 1412(a)(4), 1414(d)(1)(B).

Although IDEA is a federal statute that applies nationally, the Court describes it here as it affected Plaintiffs. The process kicks off when the "local education agency," in this case DCPS, performs an "initial evaluation" to determine if a child has a qualifying disability. *Id.* § 1414(a)(1). In conducting the evaluation, DCPS must use "a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information," and the child must be assessed "in all areas of suspected disability." *Id.* § 1414(b). No "single measure or assessment" may be used "as the sole criterion for determining whether a child is a child with a disability." *Id.* This evaluation, and any subsequent re-evaluation, forms the basis for identifying the child's needs and the requirements of the child's IEP to meet those needs and support her educational development.

If a parent of a student is dissatisfied with DCPS' "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," *id.* § 1415(b)(6), IDEA entitles them to present their arguments in an "impartial due process hearing." *Id.* § 1415(f). At that hearing, the parties may present evidence and expert testimony about the child's educational and functional needs. *Id.* § 1415(f), (h). After the hearing, an independent hearing officer issues a Hearing Officer Determination (HOD), which determines whether DCPS denied the student a free appropriate public education (FAPE) and, if so, orders an appropriate remedy. *Id.* § 1415(f)(3)(E); *see also B.D. v. District of Columbia*, 817 F.3d 792, 798 (D.C. Cir. 2016). Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2).

More specifically, parents such as K.H.'s who disagree with an evaluation by DCPS may examine all the records a school possesses concerning their child and obtain their own independent education evaluation (IEE) for consideration. *Id.* § 1414(b). That IEE must be publicly funded unless DCPS can demonstrate to an administrative hearing officer "that its evaluation [was] appropriate." 34 C.F.R. § 300.502(b). "IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion." *Schaffer ex rel. Shaffer v. Weast*, 546 U.S. 49, 60-61 (2005). "They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition." *Id.* at 61.

### B. Evaluation of K.H.

In the fall 2017, K.H. was a seventh-grade student at Brookland Middle School in the District of Columbia. *See* Admin. R. (AR) [Dkts. 7-8] at 20. In October of that year, Plaintiffs asked DCPS to evaluate K.H. to determine if she had a disability and was eligible for special education services. *Id.* at 80. DCPS agreed to assess K.H. in five areas: assistive

3

technology; occupational therapy; speech/language; functional behavior; and comprehensive psychological. *See id.* at 91. Ultimately, K.H. received a comprehensive psychological assessment, an occupational therapy assessment, a speech and language assessment, and a functional behavior assessment. *See id.* at 93-177. However, K.H. received no assessment related to assistive technology. *See id.* at 178-85. Based on the four assessments she did receive, DCPS finalized its evaluation of K.H. in March 2018 and determined that she was not eligible for special education services. *Id.* at 184-85.

Plaintiffs disagreed with the result of the evaluation by DCPS and asked it to fund an IEE for K.H. *Id.* at 187-88. Specifically, they asked DCPS to fund independent assessments mirroring the four assessments already performed by DCPS, and for DCPS either to perform an assistive technology assessment or to fund such an independent assessment. *Id.* After brief consideration, DCPS denied Plaintiffs' request. *Id.* at 197. In April 2018, Plaintiffs filed an administrative complaint seeking an order requiring DCPS to fund an IEE for K.H. *Id.* at 199-204.

In September 2018, as the parties were preparing for their administrative hearing, DCPS determined that the occupational therapist who had conducted K.H.'s occupational therapy assessment would be unavailable to defend the validity of the assessment. *See id.* at 527. DCPS thus offered to fund an IEE which included both an occupational therapy assessment and an assistive technology assessment for K.H. *Id.*[1] However, DCPS continued to defend the validity of its psychological, speech and language, and functional behavior assessments and declined to fund assessments that it viewed as duplicative.

---

[1] The Administrative Record does not make clear when DCPS offered to fund an independent assistive technology assessment, and references to this assessment remain unclear in the parties' briefs.

The administrative hearing was held on October 3, 2018, and the Hearing Officer issued his opinion on October 17, 2018. *See generally* HOD, AR at 3-19. As relevant to this case, the Hearing Officer determined that DCPS properly conducted the psychological, speech and language, and functional behavior assessments, and that DCPS had satisfactorily performed its evaluation. *Id.* at 17-18. Although the Hearing Officer acknowledged that DCPS had not defended its occupational therapy assessment, he concluded that Plaintiffs' complaint in this regard was mooted by DCPS' offer of funding for such an assessment. *Id.* Finally, he made no determination regarding the missing assistive technology assessment. *Id.*

Plaintiffs filed the present action in December 2018, seeking review of the Hearing Officer's determination. *See* Compl. [Dkt. 1]. Plaintiffs argue that the Hearing Officer erred when he denied K.H. an IEE (Count I), when he failed to address the missing assistive technology assessment (Count II), and when he determined that Plaintiffs' request for an independent occupational therapy assessment was mooted by DCPS' offer of funding (Count III). Both parties now move for summary judgment and the matter is ripe for review.[2]

## II.   LEGAL STANDARD

Although motions for review of an HOD are styled as motions for summary judgment, the court does not follow "a true summary judgment procedure." *L.R.L. ex rel. Lomax v. District of Columbia*, 896 F. Supp. 2d 69, 73 (D.D.C. 2012) (citation omitted). Instead, a motion for summary judgment in this context operates as a motion for judgment on the administrative record and on any additional evidence presented by the parties. *D.R. ex rel. Robinson v. District of Columbia*, 637 F. Supp. 2d 11, 16 (D.D.C. 2009).

---

[2] *See* Pls.' P. & A. in Supp. of Pls.' Mot. for Summ. J. [Dkt. 9-2]; Def.'s Opp'n to Pls.' Mot. for Summ. J, & Cross Mot. for Summ. J. (Cross Mot.) [Dkt. 12]; Pls.' Opp'n to Def.'s Cross Mot. for Summ. J. [Dkt. 14]; Def.'s Reply to Pls.' Opp'n to Def.'s Cross Mot. for Summ. J. [Dkt. 16].

A party challenging a hearing officer's administrative determination "must at least take on the burden of persuading the court that the hearing officer was wrong." *See Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1989). "While the court must make an independent determination, the court also should give due weight to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *D.K. v. District of Columbia,* 983 F. Supp. 2d 138, 144 (D.D.C. 2013) (citation omitted). Despite this instruction, a court affords somewhat less deference to HODs in the context of IDEA than is conventional for most other administrative proceedings. *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 521 (D.C. Cir. 2005). "Moreover, a hearing decision without reasoned and specific findings deserves little deference." *Id.* (citation omitted).

### III.   ANALYSIS

As a preliminary matter, multiple documents in the Administrative Record, and on occasion the parties in their briefs, use the terms "assessment" and "evaluation" interchangeably. Although in common parlance these words would be synonyms, "IDEA defines them differently." *Jones v. District of Columbia*, 15-cv-01505, 2017 WL 10651264, at *13 (D.D.C. Jan. 1, 2017) (citing *T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1291 n.13 (11th Cir. 2015)). "Diagnostic assessments—which the IDEA refers to simply as 'assessments'—are the tools used as part of an evaluation or re-evaluation of a student to ensure that the child is evaluated in 'all areas of suspected disability' and to 'determin[e] an appropriate education program for the child.'" *Id.* (quoting 20 U.S.C. § 1414(b)) (internal citations omitted). "On the other hand, an 'evaluation' or 're-evaluation' is the process during which these assessments occur." *Id.* (citing 20 U.S.C. § 1414(b)(2)). Thus, the statute "envisions that an evaluation or re-evaluation will make use of multiple assessments to fully evaluate the child's needs." *Id.* "Evaluations must take into account a holistic perspective of the child's needs."

*Harris v. District of Columbia*, 561 F. Supp. 2d 63, 67 (D.D.C. 2008).  Ultimately, the outcome of an evaluation flows from all of the assessments which undergird it.

This distinction is important because, when "a parent requests an independent education evaluation at public expense," the school must grant that request unless it can demonstrate to an administrative hearing officer "that its *evaluation* is appropriate."  40 C.F.R. § 300.502(b)(2) (emphasis added).  That is, the school must defend the appropriateness of the evaluation as a whole and, thus, all of the assessments on which it relies.  It cannot defend only some of the underlying data and demur on others because reaching an evaluative conclusion based on incomplete data would be, to borrow a phrase, arbitrary and capricious.

This brings the Court to the case at hand.  It is unnecessary to consider whether the three assessments which DCPS performed and successfully defended were appropriate because the inquiry is not into individual assessments but rather the resulting evaluation.  To that end, DCPS readily admits that when conducting its evaluation "it overlooked Plaintiffs' request for an assistive technology [assessment]," and that the Hearing Officer "did not address the fact that an assistive technology [assessment] was not administered."  Cross Mot. at 20.  Further, although DCPS did perform an occupational therapy assessment, it failed to provide evidence supporting that assessment at the administrative hearing and the Hearing Officer acknowledged as much.  *See* AR at 15-16.  Therefore, DCPS could only defend three of the five assessments it agreed at the outset were necessary to evaluate K.H. properly, that is, to evaluate *whether* K.H. has one or more disabilities and the *severity* of any such disabilities so that an appropriate individual education plan could be developed.  With the half-performance demonstrated by DCPS at the hearing, the Hearing Officer erred in finding that the partial evaluation conducted by DCPS was appropriate.  Therefore, K.H. was entitled to a publicly funded IEE.

DCPS argues that it should be allowed to piece together a complete evaluation with a mix of those assessments already performed by DCPS and two new independent assessments. The argument is unsupported by the statutory or regulatory language. Congress made clear that when DCPS (or any public school system) is preparing its evaluation, it must "administer such assessments and other evaluation measures as may be needed to produce the data" necessary to determine if the child has one or more disabilities. 20 U.S.C. § 1414(c)(2). By law, if DCPS determines that it needs no other data before the evaluation is finalized, parents who nonetheless believe additional data is needed have "the right . . . to request an *assessment*" to produce such data and contribute to the evaluation. *Id.* § 1414(c)(4)(A)(ii) (emphasis added). However, once DCPS finalizes an evaluation, parents have a statutory right "to obtain an independent educational *evaluation* of the child." *Id.* § 1415(b)(1) (emphasis added); *see also* 34 C.F.R. § 300.502(b)(1) (emphasis added) ("A parent has the right to an independent educational *evaluation* at public expense if the parent disagrees with an *evaluation* obtained by the public agency."). Congress did not provide a right to request independent assessments instead of an independent evaluation, but this is just common sense, since assessments are only the building blocks to an evaluation. Congress thus recognized that an evaluation considers a myriad of possible disabilities and assessments in a "holistic" fashion, depending on the child. *Harris*, 561 F. Supp. 2d at 67. More to the point, Congress recognized that assessments cannot be separated from the evaluation which they inform. Here, DCPS determined which assessments were needed to evaluate K.H. but failed to perform them all or even to defend successfully all of those it did perform. Without necessary assessments, its evaluation was clearly deficient. IDEA entitles K.H. to a publicly funded independent educational evaluation, and therefore entitles her to all of the independent assessments necessary to formulate that evaluation.

Notwithstanding, DCPS argues that IDEA encourages "partial resolution" of IEE disputes by encouraging mediation before either parents or the school engages in the administrative hearing process. Cross Mot. at 11-12 (citing *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001-02 (2017); *C.W. Capistrano Unified Sch. Dist.*, 2012 WL 3217696, at *6 (C.D. Cal. Aug. 3, 2012); *J.P. ex rel. E.P. v. Ripon Unified Sch. Dist.*, 2009 WL 1034993, at *7 (E.D. Cal. Apr. 15, 2009)); *see also* 20 U.S.C. § 1415(e)(1) (requiring schools first offer mediation to resolve disputes); *see also id.* § 1415(f)(1)(B) (requiring a "resolution session" before any administrative hearing on the merits). The cases cited by DCPS concern deference and delay, not "partial resolution." Even with a more generous reading, at most the cited cases stand for the proposition that the parties should resolve or narrow the issues in dispute before an administrative hearing.

But mediation has not narrowed the issues here: DCPS continues to defend its deficient performance; it does not contest that five assessments are needed to evaluate K.H. properly and that it failed to conduct or defend five assessments, which inevitably leads to the conclusion that the evaluation was incomplete. Plaintiffs contend that they are entitled to a publicly-funded IEE that includes all five assessments. The Court agrees with Plaintiffs. While the argument may be a closer call in other circumstances, the clear statutory language dictates a complete, independent evaluation be conducted for K.H.[3]

## IV.    CONCLUSION

DCPS did not attempt to administer an assistive technology assessment, even after it realized that assessment had not been performed. It failed to defend the occupational therapy assessment at the hearing on its deficient evaluation. Under the circumstances, the Hearing

---

[3] Plaintiffs, however, have not established that DCPS' reimbursement rates are below market.

9

Officer's decision was erroneous and contrary to IDEA.  Accordingly, the Court will grant Plaintiffs' Motion for Summary Judgment, Dkt. 9, deny Defendant's Cross-Motion for Summary Judgment, Dkt. 12, and order DCPS to fund a comprehensive IEE for K.H., based on her current status and needs.  A memorializing Order accompanies this Memorandum Opinion.

Date:  October 10, 2019

_____
ROSEMARY M. COLLYER
United States District Judge